UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHERINE COOKMAN,                        Case No. 13-10687

        Plaintiff,                   Nancy G. Edmunds
v.                                        United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Michael Hluchaniuk
                                          United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 11)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On February 18, 2013, plaintiff Katherine Cookman filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Nancy G. Edmunds referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt. 2).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 8, 11).

## B.    Administrative Proceedings

Plaintiff filed an application for a period of disability and disability insurance benefits on November 30, 2009.  (Dkt. 6-6, Pg ID 134-37).  Plaintiff also filed an application for supplemental security income on November 30, 2009.  (*Id.* Pg ID 141-44).  Plaintiff alleged in both applications that she became disabled beginning July 18, 2009.  (*Id.* Pg ID 134-44).  Plaintiff's claims were initially disapproved by the Commissioner on May 25, 2010.  (Dkt. 6-3, Pg ID 72-75). Plaintiff requested a hearing and on September 12, 2011, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Andrew G. Sloss, who considered the case de novo.  (Dkt. 6-2, Pg ID 53-65).  In a decision dated October 3, 2011, the ALJ found that plaintiff was not disabled and that she could perform other work that exists in significant numbers in the national economy.  (Dkt. 11-2, Pg ID 40-48).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on December 19, 2012, denied plaintiff's request

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

for review.  (Dkt. 6-2, Pg ID 26-29); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1972 and was 37 years of age on the alleged disability onset date.  (Dkt. 6-2, Pg ID 46).  The ALJ found that plaintiff had no past relevant work.  (*Id.*).  The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of January 18, 2009 through the date of the decision, October 3, 2011.  (Dkt. 6-2, Pg ID 42).  At step two, the ALJ found that plaintiff's degenerative disc disease, osteoarthritis of the right shoulder, Raynaud's disease, bipolar disorder and history of substance abuse were "severe" within the meaning of the second sequential step.  (Dkt. 6-2, Pg ID 42-45).  The ALJ found, however, that plaintiff's alleged impairments of asthma, migraine headaches and restless leg syndrome were not severe.  (*Id.*).  At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments

3

that meet or equal the severity of one of the listings in the regulations.  (Dkt. 6-2,

Pg ID 45).  The ALJ concluded that, through the date last insured, plaintiff had the

following residual functional capacity:

> to perform light work as defined in 20 C.F.R.
> 404.1567(a) and 416.967(b) except the claimant is able to
> frequently push or pull with her right upper extremity.
> The claimant also can occasionally climb ladders, ropes
> or scaffolds, and can frequently climb ramps or stairs.  In
> addition, the claimant can frequently balance, stoop,
> crouch or crawl.  The claimant is limited to frequent
> reaching and handling with her right upper extremity.
> The claimant also must avoid even moderate exposure to
> extreme cold and fumes, odors, dust and gases.
> Furthermore, the claimant must avoid concentrated
> exposure to vibration.  The claimant is also limited to
> unskilled work as defined by the regulations.

(Dkt. 6-2, Pg ID 45-46).  At step four, the ALJ found that plaintiff had no past

relevant work.  (Dkt. 6-2, Pg ID 46).  At step five, the ALJ denied plaintiff benefits

because jobs exist in significant numbers in the regional economy that plaintiff can

perform.  (Dkt. 6-2, Pg ID 47).

### B.    Plaintiff's Claim of Error

Plaintiff argues that the ALJ failed to properly evaluate all of her

impairments in developing the hypothetical question posed to the vocational

expert, and thus the vocational expert's testimony at the hearing should not

constitute substantial evidence supporting the ALJ's findings.  Plaintiff contends

that her statements concerning the intensity, persistence and limiting effects of her

4

symptoms were supported by the medical records.  According to plaintiff, she testified that Raynaud's disease, migraine headaches, arthritis and bursitis in her shoulder on the right hand side, arthritis in her back, restless leg syndrome, depression, and bipolar syndrome prevented her from working.  (Tr. 31).   Plaintiff testified that due to her Raynaud's disease, her "hands and [ ] feet are constantly feeling between awake and asleep feeling," and "it makes it hard to grip things" and "it makes it had to write[.]"  (Tr. 32).  She also stated that she is unable to "be out in direct sunlight, I can't play in the snow with my children which that [*sic*] causes my depression."  (Tr. 32).  Additionally, in regards to her shoulder, she stated that "it hurts to move it, pain in this upper part of my shoulder right here constantly."  (Tr. 33).  Plaintiff stated that because of her restless leg syndrome, it is "hard for me to stay seated and it's hard for me to - - my legs just want to constantly like kick and jitter."  (Tr. 33).  She further testified that her mental issues cause her to "go from I guess happy to really depressed really quick or from like really depressed to really happy[.]"  (Tr. 34).  She stated that her migraines can get so bad that she "curl[s] up in a ball and stay[s] in [her] room until it goes away."  (Tr. 34).  She also stated that she can only sit for around 10-15 minutes and walk a couple of blocks. (Tr. 37).

According to plaintiff, her testimony is backed up by her medical records, and the ALJ's finding that her testimony was not credible was clearly in error.

Plaintiff contends that her medical records label her Raynaud's disease under chronic or inactive conditions (Tr. 178), and also indicate that "she states she has significant dysmenorrheal that effects her ability to go to school or carry out her activities of daily living." (Tr. 258, 296). Further, one of plaintiff's physicians, Dr. John Stoker, indicated that plaintiff's complaints included migraines, "right shoulder and right cervical radicular pain and right lateral abdomen pain" (Tr. 323), and that she is "positive Raynaud's disease, positive vascular cephalgia, positive depression, positive vertigo, positive hypertension, positive obstructive lung disease, positive restrictive lung disease, positive HPV, positive hyperlipidemia, positive HPV." (Tr. 323). Plaintiff argues that her Raynaud's disease is evidenced in the records which indicate that "she describes episodic purpled discoloration of the fingers precipitated by the cold[,]" which "ha[s] been getting progressively worse." (Tr. 336). The records state that plaintiff also indicated "joint pain, swelling and stiffness occasionally" as well as "sleep disturbance, fatigue and depression." (Tr. 336, 341).

Plaintiff further argues, with regard to her mental health issues, that her medical records from Dr. Stoker indicate that she was complaining of depression as well as headaches. (Tr. 178). Also, a Hurley Mental Health record indicates that plaintiff "feel[s] helpless and overwhelmed," upset, and "obsesses over feeling nobody understands her health problems." (Tr. 205). The records state that

plaintiff was diagnosed with depressive disorder and a assigned a Global Assessment of Functioning ("GAF") score of 39-43, and that her insight is poor/limited. (Tr. 209, 217, 263, 267). Also, a Hurley Mental Health record indicates that she reports feeling more mood swings and agitation and that she "feel helpless and overwhelmed." (Tr. 272, 275). The records also indicate that plaintiff has "depression, stress, anxiety, [and] medical problems contribute to symptoms." (Tr. 312, 316). Additionally, a Medical Source Statement indicates limitations in relating and interacting, understanding/remember/carry out job instructions, and dealing with the public among other things. (Tr. 319). Thus, plaintiff concludes that her testimony regarding her severe medical impairments is backed up by medical documentation and the ALJ clearly erred in finding that plaintiff's testimony was not credible.

According to plaintiff, the vocational expert testified, in response to the hypothetical questions posed by the ALJ, that she believed plaintiff could perform work as a counter clerk, information clerk, and an assembler. (Tr. 22). Plaintiff argues that the hypothetical questions that was posed by the ALJ did not represent plaintiff in every relevant aspect, as required. Rather, plaintiff contends, the ALJ should have followed the second hypothetical question he posed, which stated that if "due to a combination of her medical conditions, associated pain and psychological symptoms this person is unable to engage in sustained work activity

7

on a regular and continuing basis for eight hours day, five days a week for a 40 hour work week or an equivalent work schedule," would the individual be precluded from work, and which the vocational expert answered in the affirmative. (Tr. 39). Plaintiff contends that the hypothetical question that the ALJ chose to follow did not represent plaintiff in every aspect and thus cannot constitute substantial evidence supporting the ALJ's decision denying benefits. Thus, plaintiff asks the Court to reverse the decision of the Commissioner and award her benefits, or, in the alternative, remand this case for further proceedings.

### C.    Commissioner's Motion for Summary Judgment

The Commissioner contends that plaintiff only contests the ALJ's weighing of her credibility. (Pl. Br. 12-14). According to the Commissioner, plaintiff argues the ALJ should have credited her testimony regarding her mental and physical limitations. Plaintiff testified that she could not work because of Raynaud's disease, migraine headaches, arthritis in her back, arthritis and bursitis in her right shoulder, restless leg syndrome, bipolar disorder, and depression. (Tr. 31). She said she had been diagnosed with Raynaud's disease about eight years prior to the hearing and it caused her hands and feet constantly to feel like they were between awake and falling asleep, making it hard to grip things. (Tr. 32). She also said she could not be in direct sunlight or play in the snow, and that she started having problems with her right shoulder following a headlock at the age of 14, and that

she experienced pain.  (Tr. 32-33).  Plaintiff also testified that she had restless leg syndrome that made it hard for her to stay seated, but that medication helped a bit. (Tr. 33).  She said that her bipolar disorder caused her to go from happy to really depressed quickly, and she complained of migraines two to three times per month. (Tr. 34).  According to the Commissioner, plaintiff complained in her application materials of difficulty lifting more than 20 pounds, reaching with her right side, walking, or using her hands.  (Tr. 153).  However, plaintiff did *not* indicate any difficulty with standing, other postural movements, memory, completing tasks, concentration, following instructions, or getting along with others.  (Tr. 153-54).

The Commissioner argues that the ALJ reasonably found plaintiff's hearing testimony regarding her mental and physical limitations was unsupported by the record evidence.  The ALJ noted the absence of objective signs and findings that would account for the severity of plaintiff's alleged symptoms.  (Tr. 21).  The ALJ cited to largely normal imaging studies (Tr. 17-18, 21), and stated that x-rays of plaintiff's cervical spine showed only minimal disc narrowing at the C5-C6 level, *mild* degenerative arthritis of the cervical spine, and a minute spur formation at C5-C6.  (Tr. 188, 202).  Similarly, x-rays of plaintiff's shoulder did not show any significant abnormalities.  (Tr. 18, citing Tr. 189).  The ALJ also cited to largely normal physical examination findings by consultative examining physician, Dr. Samiullah H. Sayyid — no evidence of motor or sensory deficits; normal reflexes

and coordination; normal range of motion in joints (with some reduced movement in her right shoulder); normal fine and gross dexterity (with some reduction in right hand grip strength); and normal gait and posture. (Tr. 18, citing Tr. 223). Similarly, plaintiff's treating physicians noted largely normal physical examination findings. (Tr. 179-80). The ALJ also noted the absence of documentation of limitations related to migraine headaches, asthma, or restless leg syndrome in plaintiff's contemporaneous treatment records (Tr. 18, 21), and that plaintiff's conditions had been treated exclusively with conservative measures like pain medication and injection therapy. (Tr. 19, 21). The Commissioner argues that it was reasonable for the ALJ to consider treatment in evaluating plaintiff's allegations. *See Helm v. Comm'r of Soc. Sec.*, 405 Fed. Appx. 997, 1001 (6th Cir. 2011).

The Commissioner further argues that the ALJ's evaluation of plaintiff's mental impairments was supported by the opinion of Leonard Balunas, Ph.D., a state agency reviewing psychologist. (Tr. 237-53). After reviewing plaintiff's medical records, Dr. Balunas opined that plaintiff was able to perform a wide range of unskilled tasks on a sustained basis. (Tr. 253). Specifically, he opined that she retained the ability to understand, carry out, and remember simple instructions; make judgments commensurate with unskilled tasks; respond appropriately to supervision, co-workers, and work situations; and deal with most changes in a

10

routine work setting. (Tr. 239). The Commissioner contends that Dr. Balunas's

opinion was consistent with plaintiff's self-reported functioning capabilities. (Tr.

153-54). Specifically, in her application materials, plaintiff did not identify any

limitations associated with memory, completing tasks, concentration, or getting

along with others. (Tr. 153-54). Indeed, the Commissioner contends, plaintiff

reported that she was able to pay attention all day, that she was "good" at following

written and oral instructions, and that she said she was "good" at getting along with

authority figures. (Tr. 154). Thus, the Commissioner concludes, the ALJ's

assessment of plaintiff's mental limitations was supported by substantial evidence.

       The Commissioner argues that, to support her testimony and refute the

ALJ's evaluation of the evidence, plaintiff here erroneously cites extensively to

evidence that was never submitted to the ALJ. (Dkt. 8, at p. 11, citing Tr. 323,

336, 341). The Commissioner explains that after the ALJ issued his decision,

plaintiff submitted approximately 90 pages of additional evidence to the Appeals

Council. (*See* Tr. 5, 308-95). The Commissioner argues that because plaintiff

never placed this information before the ALJ, it cannot be considered by this Court

in reviewing the ALJ's decision. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146,

148 (6th Cir. 1996). The Commissioner further argues that plaintiff has not sought

a "sentence six" remand to place this new evidence before the ALJ. Therefore, the

Commissioner concludes, the evidence cited by plaintiff cannot be considered.

The Commissioner argues that plaintiff cites to only one treatment record that was submitted to the ALJ when she noted that Raynaud's disease was listed under "Chronic or inactive conditions" on one of her treatment records.  However, the inclusion of Raynaud's on a list of diagnosed conditions says nothing about the severity of the condition or any work-related functional limitations.  *See Despins v. Comm'r of Soc. Sec.*, 257 Fed. Appx. 923, 930 (6th Cir. 2007) ("The mere existence of those impairments, however, does not establish that Despins was significantly limited from performing basic work activities for a continuous period of time.").

Therefore, the Commissioner concludes, while plaintiff may disagree with the ALJ's credibility assessment, the ALJ's assessment was well within the zone of reasonable choices. *See Mullen v. Bowen*, 800 F.2d 535, 595 (6th Cir. 1986). Moreover, the ALJ provided a reasonable explanation for why he discredited plaintiff's allegations and that explanation was supported by substantial evidence. The Commissioner argues that because the ALJ made a reasoned and reasonable decision based on substantial evidence, the ALJ's weighing of plaintiff's credibility should be afforded its due deference and the ALJ's decision should be affirmed.

The Commissioner notes that plaintiff also argues that the ALJ's hypothetical question to the vocational expert should have reflected the mental and

physical limitations she alleged at the hearing. (Dkt. 8, pp. 8-11). However, the Commissioner argues, an ALJ is not obliged to incorporate unsubstantiated complaints into his hypothetical questions to the vocational expert. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994). According to the Commissioner, because the ALJ reasonably discredited plaintiff's allegations, he did not need to include such limitations in hypothetical questions posed to the vocational expert at the administrative hearing. Therefore, the Commissioner concludes, the ALJ's decision was supported by substantial evidence and the Court should affirm his decision.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

14

appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.     Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become

16

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed

17

> to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

18

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

Plaintiff argues that the ALJ's hypothetical question posed to the vocational expert did not accurately describe her in all significant respects. Specifically, plaintiff argues that the ALJ should have credited her testimony regarding her mental and physical limitations in formulating the hypothetical question. The undersigned has thoroughly reviewed the record evidence, the parties' submissions, and the ALJ's decision, and finds that the ALJ reasonably found plaintiff's testimony regarding her mental and physical limitations was unsupported by the record evidence. In creating a hypothetical for a vocational expert, the ALJ is obligated to "translate the [plaintiff's deficiencies] into a set of specific limitations that are properly rooted in the administrative record." *Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F.Supp.2d 804, 807 (E.D. Mich. 2005); *see also Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (a hypothetical must "accurately [set] forth the plaintiff's physical and mental impairments."). "The rule that a hypothetical question must incorporate all of the claimant's physical and

19

mental limitations does not divest the ALJ of his or her obligation to assess

credibility and determine the facts.  In fashioning the hypothetical question to be

posed to the vocational expert, the ALJ 'is required to incorporate only those

limitations accepted as credible by the finder of fact.'"  *Bartyzel v. Comm'r of Soc.*

*Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003) (citing *Casey v. Sec'y of Health &*

*Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *see also Gant v. Comm'r of*

*Soc. Sec.*, 372 Fed. Appx. 582, 585 (6th Cir. 2010); *Stanley v. Sec'y of Health &*

*Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994) (the ALJ is not obliged to

incorporate unsubstantiated complaints into his hypothetical).

Plaintiff relies extensively on her testimony at the hearing, describing her

symptoms.  However, subjective allegations of disabling pain cannot alone support

a finding of disability.  *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain

or other symptoms will not alone establish that you are disabled; there must be

medical signs and laboratory findings which show that you have a medical

impairment(s) which could reasonably be expected to produce the pain or other

symptoms alleged[.]).  Rather, the presence of an underlying medical condition,

which could produce disabling symptoms, satisfies the first prong of the Sixth

Circuit standard for evaluating subjective complaints.  *See Duncan v. Sec'y of*

*Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).  To satisfy the second

prong of the test, and prove that her subjective complaints are disabling, plaintiff

must present objective medical evidence confirming the severity of the alleged symptoms, or show that the medical condition is of such severity that it could reasonably be expected to produce disabling symptoms. *Duncan*, 801 F.2d at 853. Where, as here, plaintiff's alleged or reported symptoms were found to exceed the expected level of pain and/or dysfunction, the ALJ properly considered other factors relating to the subjective complaints as set forth in 20 C.F.R. § 404.1529 and SSR 96-7p.  SSR 96-7p provides, in part, that the adjudicator in addition to the objective medical evidence, must consider the following when assessing the credibility of an individual's statements:  (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. "[W]hile the ALJ should consider these factors, he is not required to significantly analyze any of them."  *Obuch v. Comm'r of Soc. Sec.*, 2009 WL 877697, at *6

(E.D. Mich. Mar. 30, 2009). The adjudicator must then evaluate all of this information and draw appropriate inferences and conclusions about the credibility of the individual's statements. SSR 96-7p.

Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). It is the ALJ's function to determine credibility issues; the court does not make its own credibility determinations and the court cannot substitute its own credibility determination for the ALJ's. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Rather, the court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed[.]" *Kuhn v. Comm'r of Soc. Sec.*, 124 Fed. Appx. 943, 945 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [plaintiff] are reasonable and supported by substantial evidence in the record." *Id.* However, in reaching his credibility finding, "there is nothing patently erroneous in the ALJs decision to rely on h[is]

22

own reasonable assessment of the record over the claimant's personal testimony."
*White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (citing SSR 96-7p
as stating that ALJs may rely on "[s]tatements and reports from the individual and
from treating or examining physicians or psychologists and other persons about the
individual's medical history" to assess credibility).

In this case, there is ample evidence supporting the ALJ's credibility
determination, as well as his RFC assessment and accompanying hypothetical
question to the vocational expert.  The ALJ properly noted inconsistencies with
plaintiff's testimony and the record evidence and found, after careful consideration
of the evidence, that plaintiff's medically determinable impairments could
reasonably be expected to cause her alleged symptoms, but that plaintiff's
subjective complaints were not fully credible to the extent they are inconsistent
with the residual functional capacity assessment.  (Dkt. 6-2, Pg ID 42-43, 46).  The
ALJ explained that the medical evidence of record does not contain objective signs
and findings that would account for the severity of the symptoms alleged.  (*Id.*).
Specifically, the ALJ noted that x-rays of plaintiff's cervical spine and right
shoulder reveal no evidence of significant disc herniation, nerve root compression,
or significant abnormalities.  (*Id.* citing Tr. 172-204).  The undersigned recognizes
that while objective evidence is not the only factor relevant to determining the
credibility of a claimant's symptoms, it remains a "useful indicator" for the ALJ

when evaluating the credibility of plaintiff's symptoms.  *See* 20 C.F.R.

§ 404.1529(c)(2).  The ALJ also noted that plaintiff's symptoms have been treated

exclusively with conservative measures, such as pain medication and injection

therapy, and that no surgery has been performed or even recommended.  (Dkt. 6-2,

Pg ID 43, citing Tr. 172-204).  *See Helm v. Comm'r of Soc. Sec.*, 405 Fed. Appx.

997, 1001-02 (6th Cir. 2011) (ALJ properly noted that plaintiff's "modest

treatment regimen [ ]–consisting solely of pain medication–was inconsistent with a

finding of total disability") (citing *Myatt v. Comm'r of Soc. Sec.*, 251 Fed. Appx.

332, 334-35 (6th Cir. 2007)).  In addition, the ALJ noted that plaintiff was

examined by Dr. Sayyid at the request of the Social Security Administration, who

described plaintiff's cervical and thoracolumbosacral spine and all major joints,

except the right shoulder (which was tender and painful on passive movements

with some reduced movements), as normal, with full range of movements.  (Dkt. 6-

2, Pg ID 43, citing Tr. 222-28).  Plaintiff demonstrated some mild reduction in grip

strength in her right hand, but her stance, posture and ambulation were normal and

she was able to walk on her heels and toes, squat and recover, and get on and off

the table without difficulty.  (*Id.*).  The ALJ found the medical evidence consistent

with the ability to perform a significant range of light work.  (*Id.*).

The ALJ further noted that while the record reveals a history of Raynaud's

disease affecting plaintiff's hands, and plaintiff has alleged difficulties due to

24

migraine headaches, asthma and restless leg syndrome, there is no documentation of any limitations related to migraines, Raynaud's syndrome or restless leg syndrome, and plaintiff testified that her asthma symptoms were adequately controlled by inhalers.  (Dkt. 6-2, Pg ID 43-44, 46).  The undersigned notes that most records plaintiff relies on in her brief to support these claims were never submitted to the ALJ, but were first submitted to the Appeals Council following the administrative hearing.  (Dkt. 8, p. 11, citing Tr. 323, 336, 341).  The Appeals Council in this case "found that this information does not provide a basis for changing the [ALJ's] decision."  (Dkt. 6-2, Pg ID 27).  Evidence such as this, submitted for the first time the to Appeals Council (Exhibits 12F - 15F, beginning at Tr. 307), cannot be considered by the undersigned for purposes of review of the ALJ's decision.  As explained *supra*, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton*, 2 F.3d at 696; *Cline*, 96 F.3d at 148. Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ, and Appeals Council evidence may not be considered for the purpose of substantial evidence review. The Appeals

Council further explained that treatment notes and records post-dating the October

3, 2011 hearing date do not affect the decision about whether plaintiff was disabled

beginning on or before October 3, 2011.  (*Id.*).  The Appeals Council thus returned

those records to plaintiff and advised her "If you want us to consider whether you

were disabled after October 3, 2011, you need to apply again."  (*Id.*).

The ALJ further noted that plaintiff has a history of bipolar disorder and has

had mental health treatment for psychological symptoms.  (Dkt. 6-2, Pg ID 44-46).

Those treatment records indicate that plaintiff has been placed on medication and is

participating in treatment, and that her condition has remained stable with

treatment and the medication seems to be doing very well for her.  (*Id.*, citing Tr

205-17, 262-82).  The ALJ further noted that, at the request of the Social Security

Administration, Ms. Marianne Goergen, a licensed psychologist, performed a

psychological evaluation of plaintiff on March 11, 2010, diagnosed plaintiff with

major depression and cannabis dependence, and found moderate limitations related

to her depression.  (Dkt. 6-2, Pg ID 44, 46, citing Tr. 218-21).  The ALJ's

evaluation of plaintiff's mental impairments was further supported by the opinion

of Dr. Leonard Balunas, a state agency reviewing psychologist.  Dr. Balunas

reviewed plaintiff's medical records and submitted a mental residual functional

capacity assessment noting that plaintiff has generally moderate difficulties in

some of the following areas: understanding and memory, sustained concentration

and persistence, and social interaction, but no significant limitations with regard to
adaptation.  (Dkt. 6-2, Pg ID 44, citing Tr. 237-40).  Dr. Balunas opined that
plaintiff is able to understand, carry out and remember simple instructions; make
judgments that are commensurate with the functions of unskilled tasks (i.e., work-
related decisions); respond appropriately to supervision, coworkers and work
situations; and deal with most changes in a routine work setting.  (Tr. 239).  Dr.
Balunas further opined that there are no problems with attention and plaintiff has
sufficient concentration to perform simple 1-2 step tasks all on a routine and
regular basis.  (*Id.*).  Finally, Dr. Balunas completed a Psychiatric Review
Technique Form (PRTF) which indicated mild restrictions in activities of daily
living, moderate limitations in maintaining social functioning and concentration,
persistence and pace, and no episodes of decompensation or extended duration.
(Dkt. 6-2, Pg ID 44, citing Tr. 241-54).  The ALJ similarly found that plaintiff had
mild restrictions in activities of daily living, moderate difficulties in social
functioning and with regard to concentration, persistence or pace, and no episodes
of decompensation, and was limited, in part, to unskilled work as defined by the
regulations.  (Dkt. 6-2, Pg ID 45-46).  The ALJ reasonably relied on Dr. Balunas's
opinions in formulating plaintiff's RFC, which included a limitation to unskilled
work.  *See, e.g., Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *8 (E.D.
Mich. June 16, 2008) ("Plaintiff's argument for the selective adoption of Dr.

Marshall's 'moderate' limitations without considering the ultimate conclusion [that plaintiff could perform unskilled work on a sustained basis] would amount to a distortion of the record."); *see also Latarte v. Comm'r of Soc. Sec.*, 2009 WL 1044836, at *3 (E.D. Mich. Apr. 20, 2009) ("Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment.").[2]  Accordingly, substantial evidence supports the hypothetical question posed to the vocational expert, and plaintiff's claim of error should be denied.

The undersigned finds that the ALJ considered the entire case record, and reviewed and discussed the medical opinions of the examining and consulting physicians in making a reasonable finding that plaintiff was capable of performing a limited range of light work.  The ALJ properly applied the proper standard in evaluating plaintiff's subjective complaints of alleged disabling symptoms, and substantial evidence supports the ALJ's determination based on the medical and other evidence of record that plaintiff is not disabled.  After review of the record, the undersigned concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which

---

[2] Further, for the same reasons as set forth above, plaintiff's reliance on record evidence submitted for the first time to the Appeals Council (i.e., Tr. 312, 316, 319 at p. 12 of her brief) cannot be considered by the undersigned for purposes of review of the ALJ's decision because those exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton*, 2 F.3d at 696; *Cline*, 96 F.3d at 148.

decisionmakers may go either way without interference from the courts," *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994), as the decision is supported by substantial evidence.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

29

etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: October 28, 2013                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on October 28, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Richard J. Doud, Vanessa Miree Mays, Meghan O'Callaghan.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov